# UNITED STATES DISTRICT COURT

for the
District of Colorado

| | | |
|---|---|---|
| In the Matter of the Search of | | |
| A silver 2019 Jeep Grand Cherokee bearing Illinois license plate AR81260, and a white 2019 Dodge Durango bearing Colorado license plate 444-MFD, currently being held in secure storage at the Denver Police Impound, 5160 York St., Denver, Colorado, more fully described in Attachment A, attached hereto. | ) ) ) ) ) ) | Case No.   20-sw-989-KLM |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that there is now concealed on the following person or property located in the __State and__ District of __Colorado__ *(identify the person or describe property to be searched and give its location)*:

**SEE "ATTACHMENT A"**, which is attached to and incorporated in this Application and Affidavit

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*:

**SEE "ATTACHMENT B"**, which is attached to and incorporated in this Application and Affidavit

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- X evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of __18__ U.S.C. §§1951(a) and 924(c), and the application is based on these facts:

- X Continued on the attached affidavit, which is incorporated by reference.
- ☐ Delayed notice of __30__ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*s/ Michael Kim*
_____
*Applicant's signature*

Michael Kim, Task Force Officer, FBI
_____
*Printed name and title*

Sworn to before me and: ☐ signed in my presence.
X submitted, attested to, and acknowledged by reliable electronic means.

Date: **26 Aug 2020**

_____
*Judge's signature*

City and state: __Denver, CO__

Kristen L. Mix
United States Magistrate Judge
_____
*Printed name and title*

**ATTACHMENT A**

**<u>DESCRIPTION OF LOCATION TO BE SEARCHED</u>**

A silver 2019 Jeep Grand Cherokee SUV bearing Illinois license plate AR81260 and VIN 1C4RJFBG7KC745959; and a white 2019 Dodge Durango SUV bearing Colorado license plate 444-MFD and VIN 1C4RDJDG1KC825023, both being held in secure storage at the Denver Police Impound Facility, 5160 N. York St., in the City and County of Denver, State of Colorado.

**ATTACHMENT B**

**DESCRIPTION OF ITEMS TO BE SEIZED AND SEARCHED**

1. U.S. Currency taken in robberies including, but not limited to: $4,089 in US Currency in multiple denominations taken from the robbery at Cricket Wireless at 6336 Ivy St. in Commerce City, Colorado, on July 18, 2020; the robbery of Cricket Wireless at 3900 W. Colfax Ave. in Denver, Colorado, on July 24, 2020; the robbery of the Boost Mobile at 7318 N. Federal Blvd. in Westminster, Colorado, on July 24, 2020: and the robbery of the MetroPCS at 7155 W. Colfax Ave. in Lakewood, Colorado, on July 25, 2020

2. Firearms and firearms accessories including, but not limited to, handguns, long guns, shotguns, and replica or non-lethal devices that appear similar to functioning firearms, holsters, ammunition (live and spent)

3. Indicia of ownership or occupancy of the vehicle including, but not limited to, postal mail/packages, lease agreements, utility bills, credit card statements, vehicle registration, vehicle title information, insurance documentation, bills of sale, and all other documents displaying names and/or addresses associated with occupants or owners of the location to be searched

4. Any nontestimonial identification evidence including but not limited to blood stains or residue, human tissue, hair fibers, natural or synthetic fibers, fingerprints, and any other trace or DNA evidence

5. Notes, maps, sketches, drawings, and/or writings related to the planning and/or execution of robberies, burglaries, and other illicit activity, including, but not limited to: the burglary at Maaliki Motors at 709 S. Havana St. in Aurora, Colorado, on July 18, 2020; the robbery at Cricket Wireless at 6336 Ivy St. in Commerce City, Colorado, on July 18, 2020; the robbery of Cricket Wireless at 3900 W. Colfax Ave. in Denver, Colorado, on July 24, 2020; the robbery of the Boost Mobile at 7318 N. Federal Blvd. in Westminster, Colorado, on July 24, 2020: and the robbery of the MetroPCS at 7155 W. Colfax Ave. in Lakewood, Colorado, on July 25, 2020

6. Cellular telephones taken in robberies, theft, or other illicit activity including, but not limited to: the robbery at Cricket Wireless at 6336 Ivy St. in Commerce City, Colorado, on July 18, 2020; the robbery of Cricket Wireless at 3900 W. Colfax Ave. in Denver, Colorado, on July 24, 2020; the robbery of the Boost Mobile at 7318 N. Federal Blvd. in Westminster, Colorado, on July 24, 2020: and the robbery of the MetroPCS at 7155 W. Colfax Ave. in Lakewood, Colorado, on July 25, 2020

7. Keys and remotes for vehicles stolen in burglaries including, but not limited to, the burglary of Maaliki Motors, 709 S. Havana St., Aurora, Colorado, on July 18, 2020

8. Apparently personally-owned Cellular telephones (A complete and thorough search of electronic communication devices may occur at a later date utilizing separate warrants at a location other than the location to be searched due to the complexity and time-consuming nature of imaging such devices.)

9. Unique clothing, backpacks, masks, and disguises, including but not limited to those worn during: the burglary at Maaliki Motors at 709 S. Havana St. in Aurora, Colorado, on July 18, 2020; the robbery at Cricket Wireless at 6336 Ivy St. in Commerce City, Colorado, on July 18, 2020; the robbery of Cricket

Wireless at 3900 W. Colfax Ave. in Denver, Colorado, on July 24, 2020; the robbery of the Boost Mobile at 7318 N. Federal Blvd. in Westminster, Colorado, on July 24, 2020: and the robbery of the MetroPCS at 7155 W. Colfax Ave. in Lakewood, Colorado, on July 25, 2020





## AFFIDAVIT

I, Michael Kim, being duly sworn, hereby depose and state that the following is true to the best of my information, knowledge, and belief:

## INTRODUCTION AND AGENT BACKROUND

1.      I hereby inform the Court that I am a commissioned peace officer with the Commerce City (Colorado) Police Department, and am currently assigned as a Task Force Officer with the FBI Rocky Mountain Safe Streets Task Force ("RMSSTF").  I am responsible for investigating violent crimes in the Denver metropolitan area, including robberies.  I have been a police officer in Colorado for sixteen years and have training and experience in the investigation of property crimes, financial crimes, and violent crimes, including assaults, homicide, and robbery. The information contained in this affidavit is based upon information compiled from my personal involvement, witness/victim interviews, fellow law enforcement officers, informants and by reading official police reports.

2.      This affidavit is submitted in support of an application for a search warrant for the place described in Attachment A, there being probable cause to believe that located in the place described in Attachment A are items described in Attachment B, being evidence, fruits, and instrumentalities of violations of Title 18, United States Code, Sections 1951(a), Interference with Commerce by Threats or Violence, and 924(c) Brandishing a Firearm in Furtherance of a Crime of Violence.

3.      Because this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation.  I have set forth facts that I believe are necessary to establish probable cause to believe that evidence, fruits, and instrumentalities of violations of 18 U.S.C. §§1951(a) Interference with Commerce by Threats or Violence, and 924(c) Brandishing a Firearm in Furtherance of a Crime of Violence, are presently located at the place described in Attachment A.

4.      The information contained within the affidavit is based on my training and experience, as well as information imparted to me by other law enforcement officers involved in this investigation.

## INVESTIGATION

5.      The United States, including the Federal Bureau of Investigation, is conducting a criminal investigation of Braejon Lee Spikes, Dontari Hudson, and several unidentified co-conspirators regarding possible violations of 18 U.S.C. §§ 1951(a) and 924(c).

### July 18, 2020, Cricket Robbery and Roadway Attempted Robbery

6.      On Saturday, July 18, 2020, at approximately 7:01 Mountain Time (MT), patrol officers with the Commerce City Police Department (CCPD) were dispatched to the Cricket Wireless Store at 6336 Ivy St. in reference to a robbery just occurred.  This is located within the City of Commerce City, County of Adams, State of Colorado.

7.      The victim employee, M.G. (a person over 21 years old), told investigators the following:  two black males, armed with handguns, had entered the store and initially acted as if they were customers interested in Apple iPhones.  Once M.G. started to assist them and began to bring iPhones out for the robbers to examine, they produced handguns.  One robber pointed a gun at his head, while the other pointed a handgun at his groin.  M.G. was in extreme fear for his life and safety.  The robbers went to the back of the store and attempted to open the safe.  They were unsuccessful, but did steal several phones, accessories, and cash.  They then fled the scene.

8.      M.G. described the robbers as two black males, one light-skinned, and one dark-skinned.  The light-skinned male wore a light colored shirt, and the dark-skinned male was dressed in black.  One of the males also had a prominent spiderweb tattoo on his neck and throat, although it was unclear which one.  Crime Scene Investigators collected evidential DNA swabs of several areas that the robbers were known to have touched.

9.      The following money and merchandise were taken by the robbers from the care, custody, and control of Cricket Wireless, a business involved in interstate commerce: $4,089 in US Currency; multiple cell phones with a total value of at least $2,929.97; and cell phone accessories valued at $250.  A video canvass revealed the below images of the suspects:



10.      In the minutes following the robbery, after hearing descriptions of the robbers being aired over the police radio, a CCPD patrol officer in the vicinity realized that she had actually seen the robbers fleeing from the scene, just prior to the robbery being aired.  She had been in the area of East 64th Avenue and Monaco St. when she had seen a late model black BMW 5-series fleeing eastbound on East 64th Avenue.  The driver was a light-skinned black male with blonde-tinted hair.  The passenger was a darker-skinned male.  The vehicle was traveling at a high rate of speed eastbound away from the vicinity of the Cricket store.  The officer was assigned to another incident, and did not attempt to stop the BMW.  However, moments later when the robbers' descriptions were aired, she advised Adams County Communications (ADCOM) of the vehicle's description and direction of travel.  ADCOM, in turn, immediately broadcast this information to surrounding jurisdictions as a "Be On the Look Out" (BOLO) broadcast.

11.      Minutes after the BOLO was broadcast, Denver Police Department (DPD) Communications Center contacted ADCOM to pass along information related to a citizen

sighting of the black BMW.  A CCPD officer contacted this complainant, I.Q. (a person over 21 years old), telephonically, and she reported the following: She was stopped at the red light near East 60th Ave. and Quebec St.  Her vehicle was directly behind another vehicle being driven by her daughters.  I.Q. observed a vehicle traveling eastbound behind them at a high rate of speed. The vehicle, a newer black BMW, pulled into the left turn lane alongside her daughter's vehicle. As it passed, I.Q. observed that the driver was a light-skinned male in a white shirt, and the passenger was darker-skinned in black clothing.  She observed the driver of the BMW point a handgun at her daughter's vehicle before fleeing southbound.  Both I.Q. and her daughters pursued the BMW while they alerted police, and at various times were placed in fear for their lives when the driver pointed handguns at them.  The BMW was last seen in the City of Aurora.

### *Connection to Larger Pattern of Robberies*

12.     Your affiant noted a similarity in the aforementioned robbery's M.O. to a series of robberies that occurred in both the City of Aurora and in unincorporated Arapahoe County on July 4 and 5, 2020.  Aurora Police Department (APD) had generated a law enforcement bulletin in regards to these incidents that depicted black male suspects fitting the general description of the robbers from July 18.  In addition, in both of those robberies, victims described one of the black males as having a prominent spiderweb tattoo on their throat.  Your affiant contacted the assigned APD detective, David Gallegos, who advised your affiant of a possible connection to a robbery of an AT&T store in Cheyenne, Wyoming.  In that case, two black males had robbed the store of cell phones before fleeing in a white Dodge Durango with passenger side damage, as seen here:

[continued on next page]



13.     Your affiant contacted the Cheyenne PD (CPD) investigator assigned to that robbery, Allison Baca.  Det. Baca believed the case was connected to APD's case based on APD's M.O. and suspects described in their bulletin.  In addition, one of the phones stolen in their robbery had been sold to a citizen in Denver by a black male he met through Facebook Marketplace.  That black male later asked the citizen to meet him again because he had apparently sold him the wrong phone, and wanted to swap it for the correct one.  The black male then robbed the citizen of the phone at gunpoint before fleeing.

14.     Det. Baca provided the suspect's Facebook account information to Det. Gallegos. Det. Gallegos identified the Facebook account's owner as Weini Mayeil.  Det. Gallegos also found that Mayeil was in police custody after having recently been arrested after a police pursuit of a carjacked vehicle he had been in.  At the time of his arrest, Mayeil was in possession of a cell phone (which he identified as his own) that had been stolen in the Cheyenne AT&T robbery wherein the suspects fled in the white Dodge Durango pictured above.

### July 20, 2020, MetroPCS Robbery

15.     On July 20, 2020, at approximately 2:48PM MT, patrol officers with CCPD were dispatched to the MetroPCS store at 7260 Monaco St. in reference to a robbery just occurred. This is located within the City of Commerce City, County of Adams, State of Colorado.

16.     The victim employee, C.P. (a person over 18 years old), told investigators the following:  two black males had entered the store and initially acted as if they were customers interested in Apple iPhones.  One of the males asked her for a particular iPhone.  She walked to the back room to obtain the phone and was startled to notice that the male had followed her.  He produced a handgun and demanded all of the iPhones she had.  C.P. was in extreme fear for her life and safety so she complied with the robber's demands.  While this occurred, the other male stayed near the front of the store as a lookout.  After obtaining the phones, both suspects fled the scene. Crime Scene Investigators collected evidential DNA swabs of several areas that the robbers were known to have touched.

17.     Your affiant responded to the scene and spoke with one of the store's employees, A.E. (a person over 21 years of age).  A.E. told your affiant that one of the males was one that had robbed several other MetroPCS stores in the Denver metro area.  He provided several photographs of the male and his getaway vehicles from these other, as-yet unidentified robberies:

 



18.     C.P. described the robbers as two black males, one light-skinned, and one dark-skinned.  Investigation and video canvass confirmed C.P.'s account.  In addition, investigation revealed that the suspect arrived and fled in what appeared to be the same white Dodge Durango as the one used in the Cheyenne robbery:



*Identification into White Durango and Subsequent ID of Braejon Spikes*

19.      CCPD Detective Rich Rodriguez called other cellular phone stores in the vicinity. He spoke to E.M. (a person over 21 years old) who is an employee at the MetroPCS located at 5850 Dahlia Street in Commerce City.  E.M. advised the following: On Friday, July 17, 2020 (the day before the robbery involving the black BMW), a black male entered the store and asked how many iPhones they had in stock.  E.M. was aware of the recent robberies involving this M.O.  When the male walked out to leave, E.M. followed him to the door.  He observed the black male was driving a white Dodge Durango bearing Colorado license plate 444-MFD, as seen below:



20.      Your affiant began to research this vehicle utilizing various law enforcement databases.  He found that the plate belonged on a State of Colorado Parole Officer's state-issued vehicle.  The parole officer resides in the area of E. 44th and Malaya St. in Denver.  Your affiant had the opportunity to view the parole officer's vehicle in persona and verify it did not have damage consistent with the suspect Durango in the above photos.  Investigation determined that the parole officer's front plate had been stolen without his knowledge sometime around February or March of 2020.

21.    Your affiant searched various law enforcement dispatch systems and found various police calls for service around the metro area involving a black male in a Dodge Durango bearing the stolen license plate.  One of these calls was a potential "casing" of the MetroPCS at 3531 S. Logan St. in Englewood on June 4, 2020.  In that incident, the reporting party told police that a male he recognized from an internal company bulletin for "snatch and grab" robberies had been in the store.  However, since the "snatch and grabs" had occurred in stores located in Aurora, EPD officers directed him to contact APD.

22.    Your affiant spoke to that reporting party, now identified as A.H. (a person over 21 years of age), over the phone and he told your affiant the following: The male came in asking about iPhones to purchase.  A.H. asked him for his identification after recognizing the male from the company memos.  The male stated he would obtain his ID from his car.  A.H. followed him out and observed him get into a white Durango bearing 444-MFD.

23.    After the male left, one of A.H.'s coworkers stated that she recognized the male as someone she went to school with.  She sent a screenshot of the male's Facebook account to A.H.  A.H. provided this screenshot to your affiant, along with a photograph of the male he called on who was driving the white Durango bearing plate 444-MFD:

[continued on next page]



24.     Your affiant immediately recognized the male in the Facebook's account's publicly accessible photos as both the male at the Englewood incident, as well as being the male in the photo provided by A.E. above.  Your affiant was able to identify the male on the Facebook account as Braejon Spikes, who resides 3 blocks from where the parole officer's plate was stolen:



10

25.     Your affiant distributed this information to other case investigators at CCPD.  On July 23, 2020, CCPD Detective Mike Vasquez contacted your affiant, advising that C.P. had also recalled that she had potentially gone to school with the male who robbed her.  She provided Det. Vasquez with the same Facebook account for Spikes, and Det. Vasquez had independently and simultaneously identified Spikes.

26.     Your affiant conducted several law enforcement queries on Spikes.  He observed that Spikes has an extensive and violent criminal history, including robberies of cell phone stores, motor vehicle theft, and other crimes.  Spikes was listed as a potential suspect in an auto theft that occurred at a large rental car lot in April of 2020.  In that incident, a suspect drove through a chain link fence at the rental car lot.  Seven vehicles were stolen in the incident, including a white Camaro, a black Chrysler 300, and white Durango.  In the months since, Spikes was found in possession of the black Chrysler 300.  The white Camaro was recovered only two blocks from Spikes' residence, with a misused/stolen Wyoming plate attached.  (One of the photos sent to your affiant by A.E. depicted a white Camaro with a Wyoming plate used as a getaway vehicle).  At the time of Spikes' initial identification, the white Durango was still outstanding/unrecovered.

### July 18, 2020, Maaliki Motors Burglary with Shots Fired

27.     Investigation also revealed that just after midnight on July 18, 2020, a car dealership in the 700 block of S. Havana St. was burglarized.  The suspects were several black males who arrived in a white Durango.  In that incident, a black male with a blonde "afro" fired several rounds from a 9mm handgun into the window of the business to shatter the window.  Around 10 sets of car keys were stolen.  Three black males used these keys to steal several vehicles, including a black BMW 550i sedan and a red Audi TTS.  The robbery in Commerce City at the Cricket store, involving at least two black males in a 5-series BMW (one of whom fits Spikes' description), occurred less than a day later.

*Identification of Spikes' Chrysler 300 and Dontari Hudson*

28.      Your affiant found that Spikes also owns a silver Chrysler 300, bearing Colorado plate ABS-T38.  Your affiant noted that one of the getaway vehicles depicted in the pictures provided by A.E. was a silver Chrysler 300.  Your affiant found that Spikes' silver Chrysler had been involved in a police pursuit with APD officers in June of 2020.  On July 1, 2020, the vehicle was located abandoned by DPD and impounded at their facility, and was still there on an investigative hold.  On July 24, 2020, your affiant asked TFO Jared Purdy to respond to the impound facility to view the vehicle.  TFO Purdy advised your affiant that in plain view through the window on the driver floor board of Spikes' vehicle, he observed a credit card embossed with "Dontari Hudson."

29.      Your affiant queried Hudson in police databases.  Upon viewing his mugshot, he immediately recognized Hudson as the male seen in surveillance footage in the July 18, 2020, Cricket store robbery.

 

30.      Once both Spikes and Hudson were identified, your affiant immediately re-compared their photos to those from the Cheyenne robbery involving the white Durango.  He believes them to be the same suspects as those involved in the Cheyenne robbery, further corroborating their connection to the white Durango fleeing from the July 20 robbery, which was also seen at several MetroPCS locations, and was likely the same Durango used in the robbery where the BMW was stolen prior to the July 18 robbery.

*July 24, 2020, Robbery Spree Involving Spikes*

31.     On July 24 at approximately 11:30AM MT, officers with DPD responded to the Cricket Wireless store at 3900 W. Colfax Ave. on a report of an armed robbery.  Upon arrival, officers made contact with the victim clerk, J.G. ( a person over the age of 18), who advised the following: a black male had entered the store and soon thereafter, produced a handgun in his waistband.  He was taller with a skinny build, with dark-complexion.  He was wearing a black cloth mask and had a white and black shirt on.  He demanded several Apple iPhones, which the victim provided to him, in extreme fear for her safety.  The robber fled the store with several phones, valued at approximately $5,600, stolen from the care, custody, and control of Cricket Wireless, a business involved in interstate commerce.

32.     Your affiant arrived soon in the area after the call was broadcast.  He was made aware that surveillance footage was located by canvassing officers at the 7-Eleven store at 1490 N. Perry St., which is just adjacent to the Cricket store to the west.  Your affiant responded to the 7-Eleven and personally viewed footage of a black male who appeared to be Spikes purchasing two facemasks in the minutes prior to the robbery.  The male then leaves the store, presumably robs the Cricket, then runs back to the car he arrived in which was still parks at the gas pumps.  Your affiant observed the vehicle to be a newer model silver Jeep Grand Cherokee.

33.     At approximately 5:45PM MT, officers with DPD were dispatched to the Cricket Wireless store at 5115 N. Federal Blvd. in reference to an armed robbery likely to occur.  The reporting party in that case stated that a black male he recognized from internal bulletins as committing armed robberies was presently in the store.  Your affiant was only a few blocks away, and arrived at the store within minutes.  However, the reporting party stated that the male had already departed, perhaps growing suspicious that police had been called.  Your affiant viewed the store's surveillance footage, and observed the same male from the earlier Cricket robbery (Spikes) as the male the employee called about.  Further review of the footage revealed that the male had likely arrived in a newer model silver Jeep Grand Cherokee.

34.     Later that evening, TFO Chris Pyler advised your affiant that the Boost Mobile store at 7318 N. Federal Blvd. in Westminster had been robbed within the past hour or so. In reviewing the Westminster Police Department (WPD) report from that case, a black male fitting Spikes' description robbed the store of several phones by placing the employee in fear for her life by making her believe he had a weapon. Investigation and canvassing revealed surveillance footage from a nearby restaurant that indicated the suspect was associated with a silver Jeep Grand Cherokee. Crime Scene Investigators also responded to the scene and were able to collect a latent palm print. When submitted to the Automatic Fingerprint Identification System (AFIS), WPD investigators learned that the print belonged to Spikes.

### *Arrest Warrants Issued for Spikes and Hudson*

35.     Based on Spikes' apparent escalation in robbery frequency, your affiant believed that it was imperative to commence immediate active efforts towards effective the apprehension of Spikes and Hudson. In the evening hours of July 24, 2020, your affiant sought and was granted arrest warrants for Spikes and Hudson for one count each of Commercial Robbery in violation of Title 18, United States Code, Section 1951. The warrants were issued by the United States District Court for the District of Colorado, and were signed by the Hon. Magistrate Judge Michael E. Hegarty. They were immediately input into the National Crime Information Computer (NCIC) system.

### *July 25, 2020, Apprehension Efforts and Lakewood MetroPCS Robbery*

36.     Task Force Officers and Special Agents commenced attempts to locate Hudson and Spikes the next morning, on July 25, 2020. During the operation, but prior to investigators locating either Spikes or Hudson, at approximately 10:15AM MT, officers with the Lakewood Police Department (LPD) were dispatched to the MetroPCS store at 7155 W. Colfax Ave. on a report of a robbery.

37.     Upon arrival, LPD officers spoke with the victim, F.G. (a person over 21 years of age), who advised the following: a black male came into the store and inquired about iPhones. When she walked to the back room to obtain the phones, the male followed her to the stock room.  She tried to push the male out of the stock room, when he gestured towards his waist.  He demanded several iPhones and stated, "You don't want any trouble," and "Don't make this difficult."  F.G. complied, in extreme fear for her safety.  One of the boxes she provided contained a covert GPS tracker.  The robber then fled.

38.     Your affiant began receiving the tracker's GPS location almost immediately after the call was dispatched.  He aired the tracker's location over the LPD dispatch channel in order to direct officers to its changing location.  He also aired immediately that the suspect might be in a newer model silver Jeep Grand Cherokee.  LPD and officers from surrounding jurisdictions arrived in the area and located a silver Jeep Grand Cherokee in the area of Interstate 70 and Wadsworth Blvd.  The Jeep's location appeared to be consistent to within a few meters of the tracker locations your affiant aired on the radio.  They attempted to conduct a traffic stop of the Jeep.  The driver failed to yield to the officers, and a police pursuit ensued.

39.     Several RMSSTF investigators were monitoring all of the different radio channels involved in this pursuit.  Your affiant aired consistent tracker locations as the device traveled at speeds in excess of 100 miles per hour through the metro area.  As he did so, your affiant was receiving real time updates that the tracker's location was directly overlaid with the progress of the police pursuit, corroborating that the male who robbed the MetroPCS store in Lakewood was in the Jeep.

40.     Eventually, once undercover investigators came into the vicinity of the tracker, the marked police units fell back.  The suspect in the Jeep continued to drive erratically, tracked visually by both undercover investigators and via the GPS tracker.  At one point at a shopping center near S. Havana St. in Aurora, the Jeep was met by a red Audi TTS exactly like the one

stolen in the July 18, 2020, burglary involving shots fired in Aurora.  The Audi bore Nevada license plate 620-G12.  Both vehicles left in concert.

41.     After some "burn" runs through a neighborhood, apparently looking for covert surveillance, the vehicles parked in a lot near E. Mexico Ave. and Emporia Ct.  Investigators could not establish immediate visual surveillance, but seconds later, the tracker was found to be traveling eastbound on Mexico Ave.  At the same time, investigators observed the Audi (now occupied by two persons) traveling along the same path.  The Jeep was found parked legally and secured in the lot off of Mexico Ave.  Investigators tracked the Audi's progress throughout the area, losing visual contact with it, but eventually finding the GPS tracker discarded along S. Peoria St. near Mississippi Ave.

42.     Throughout the rest of the day on July 25, 2020, investigators would then locate the Audi for brief periods of time throughout the metropolitan area.  At approximately 2:30PM MT, your affiant observed the Audi traveling southbound through the 5100 block of Quebec St. The Audi appeared to be accompanied by a black Chevrolet Corvette bearing Florida plate EVK-N94.  The plate did not list as stolen in CCIC/NCIC, but it did list to a rental car company.  Your affiant was able to maintain surveillance on the Audi and Corvette as they drove back into the City of Aurora before each started performing counter-surveillance maneuvers and were able to evade investigators.

43.     The Audi was later seen reversing into the garage of 795 S. Dearborn Cir., which is a known associated address of Spikes.  Spikes was contacted at this address in May of 2020, in possession of the stolen black Chrysler 300.  The address apparently belongs to Spikes' girlfriend, Jorden Wesley.

44.     During this operation, your affiant also received information that the black BMW presumably used during the aforementioned robberies, stolen from Maaliki Motors, had been recovered.  It was found abandoned in the roadway near Green Valley Ranch and Pena Blvd.

with the doors open, and the rear windshield apparently shot out and shattered.  At your affiant's request, it was placed on an investigative hold.

### *Warrant Issued for GPS Tracker on Jeep*

45.     Investigators believed, based on the Spikes' previous practices of keeping stolen vehicles for months on end, frequently just changing the plates, then he would return to the Jeep after a period of time.  Based in part upon this belief, on July 25, 2020, your affiant sought and was granted a search warrant authorizing the placement of a covert GPS tracker on the Jeep.  The warrant was issued by the United States District Court for the District of Colorado and was signed by the Hon. Magistrate Judge Michael E. Hegarty.  The tracker was successfully placed upon the Jeep immediately upon the warrant's issuance.

### *July 28-29, 2020, Surveillance of Spikes and Woodward in Jeep*

46.     On July 28, 2020, investigators continued their efforts towards apprehending Spikes.  They focused the bulk of their efforts in maintaining surveillance of the silver Jeep Grand Cherokee.  The Jeep continued to depart from and return to 16199 Green Valley Ranch Blvd., and appeared to be driven by black males other than Spikes.  Individuals associated with the Jeep routinely entered and exited Building #25, but investigators could not observe which specific apartment they entered.

47.     Eventually they researched all of the apartments accessible by the particular breezeway used by the subjects associated to the Jeep.  One of the apartments #2524, was associated to a black male identified as Sirr Coleman.  Through various law enforcement databases, they confirmed that Coleman shared numerous associates with Spikes, including Bryan Terry Woodward.  Woodward appears to be a family member of Coleman.  Additionally, Woodward and Spikes were indicted together in 2018 for their involvement in a string of cellular phone store robberies with a nearly identical M.O. to those being investigated currently.

48.     Investigators made contact with the management office, showing them photographs of several individuals suspected of involvement in the crimes outlined herein, including Spikes and Hudson.  The management office confirmed that Coleman resides at #2524, and that many of the pictured individuals have been seen entering/exiting, or are otherwise associated to #2524.

49.     Investigators researched Spikes' employment history and found an associated phone number of (303) 419-6085.  Spikes provided the phone number on a job application in May of 2020.  Extensive further investigation corroborated your affiant's belief that the number belonged to Spikes.

50.     On July 29, 2020, your affiant sought and was granted a warrant to obtain historical cell phone records and location data, along with prospective location data via GPS "pings" and Pen Register/Trap and Trace installation on Spikes' cellular phone.  The warrant was issued by the United States District Court for the District of Colorado and was signed by the Hon. Magistrate Judge Michael E. Hegarty.  The warrant was immediately executed and duly provisioned by Technically Trained Agents (TTAs) of the FBI.

51.     Soon thereafter, investigators began receiving broad-radius location data for the phone.  At around the same time, your affiant observed the white Durango traveling northbound on Interstate 225 just south of Colfax Ave.  The Durango's location and direction of travel were consistent with the location data for Spikes' phone that investigators were receiving pursuant to the warrant.

52.     Eventually, using location data from Spikes' phone, investigators located the Durango parked in front of Building #25 at the Parkfield Apartments.  Investigators also observed the Jeep parked in the lot as well.  A few minutes later, they observed Spikes walk out of one of the building's breezeways (the breezeway that contains #2524), retrieve something from the Durango, then walk back into the breezeway.  A short time later, investigators observed

Spikes and Bryan Woodward emerge from the same breezeway and get into the Jeep, with Woodward driving and Spikes in the front passenger seat.

53.     The Jeep left the area, with your affiant and other investigators surveilling it. Investigators surveilled the Jeep as it traveled throughout the metropolitan area.  They further confirmed the identities of the Jeep's occupants (Woodward and Spikes) when the pair stopped at a marijuana dispensary near Broadway and Maple in south Denver.  At all times during the surveillance, the Jeep's location was consistent with location information being broadcast by Spikes' phone.  Investigators continued to surveil the Jeep until Woodward seemed to grow suspicious of two trailing unmarked DPD SWAT vehicles in the area of E. Iliff Ave. and Peoria St.  Woodward got onto Interstate 225 northbound from Iliff Ave. and fled the area recklessly. He was observed by investigators passing traffic on the left shoulder at a high rate of speed.  The GPS tracker on the Jeep indicated he was traveling in excess of 110 miles per hour on Interstate 225.  Investigators did not attempt to directly follow the Jeep once Woodward began driving recklessly.

54.     The Jeep's GPS tracker indicated that it was likely headed back to 16199 E. Green Valley Ranch Blvd.  Investigators responded back to the Parkfield apartments where they located the Jeep parked unoccupied, and the Durango gone.  In addition, location info for Spikes' phone was deactivated, indicating he had likely turned it off.

### *Apprehension of Spikes*

55.     On July 30, 2020, investigators were again concentrating their efforts to locate Spikes.  His phone had been turned back on, and had been used sporadically.  However, they had not been able to locate the white Durango.  They were monitoring various License Plate Recognition (LPR) readers throughout the metro area, watching for any vehicles and/or license plates belonging to any of Spikes' known associates to register on any of the disparate systems.

56.     During a previous surveillance, investigators had observed a black Lincoln MKX SUV bearing Colorado personalized plate WHATIF, leave then return to 795 Dearborn Cir.  The registered owner was determined to be Yolanda Robinson.  Robinson, in turn, was found in various police databases to be the mother of Jorden Wesley, Spikes' girlfriend.  Robinson was also determined to be the primary resident of the Dearborn Cir. address.

57.     On July 30, 2020, at 1:13PM MT, a LPR sensor at E. Colfax Ave. and Chester St. registered the WHATIF plate traveling eastbound through the intersection.  Investigators immediately cross-referenced the LPR "hit" with Spikes' phone activity.  They found that at 1:11PM MT, Spikes' phone communicated with cell towers and sectors consistent with having been co-located with the black MKX that registered on the LPR minutes later at Colfax and Chester.  They believed the MKX to be headed back towards 795 S. Dearborn Cir.

58.     Investigators immediately converged on the Dearborn Cir. address.  They arrived minutes later, just in time to observe the MKX leaving again, being driven by Robinson.  Spikes' phone, however, indicated that he was stationary in the area, utilizing cell towers and sectors consistent with being in the area of the Dearborn Cir. address.  This data remained constant, even after the MKX had been gone for several minutes.

59.     TFO Purdy immediately sought and was granted a warrant to search the 795 S. Dearborn Cir. address, both for Spikes and evidence of the crimes described herein.  The warrant was issued by the United States District Court for the District of Colorado and was signed by the Hon. Magistrate Judge Michael E. Hegarty.  The warrant was served by APD immediately upon its issuance.  Spikes was found in the residence and was taken into custody without incident.  In addition, numerous items of evidentiary value were seized inside the residence.

60.     In speaking with Robinson, who returned to the residence during the warrant's execution, she confirmed that Spikes does not stay there on a regular basis, but has stayed there with Wesley at least once since Hudson's apprehension earlier in the week.  Robinson was also provided with a copy of the search warrant for her home.  When asked if she recognized any of

the photographs of the robbers in Attachment B of the warrant, she gestured to the photographs of who investigators believed are Spikes and said, "That's Braejon, alright."

61.     Spikes was transported to Commerce City Police Headquarters to be processed on his outstanding warrant.  Your affiant briefly interviewed him there.  Your affiant advised Spikes of his Miranda Rights, which he indicated he understood, waived, and agreed to answer questions.  Spikes denied any culpability in any robberies or crimes your affiant asked him about.  However, when confronted with photographs of himself taken during the commission of the robberies, Spikes stated he didn't wish to speak anymore, saying "I'm incriminating myself."

62.     At your affiant's request, investigators recovered the Jeep from its parked position near E. 51st Ave. and Jasper St., just west of 16199 Green Valley Ranch Blvd.  As of August 9, 2020, it is on an investigative hold at the Denver Police Impound Facility at 5160 York St.

### Recovery of Dodge Durango

63.     On August 5, 2020, your affiant received information that the Durango had been located by DPD police officers in the area of W. 14th Ave. and Mariposa St.  Your affiant spoke with Officer J. Lippert, who told him that the vehicle had actually been impounded by a private tow company after parking in an apartment complex without a permit.  After impounding the vehicle, the company called the tow into DPD dispatch, who advised them of the Durango's outstanding wants.  At your affiant's request, Officer Lippert had the Durango transported from the private tow yard to the Denver Police Impound Facility at 5160 York St. where it currently remains secured on an investigative hold.

## **CONCLUSION**

64.     Based on the investigation described above, probable cause exists to believe that at the place described in Attachment A, will be found evidence, fruits, and instrumentalities of a violation of 18 U.S.C. § 1951(a) Interference with Commerce by Threats or Violence, and 924(c) Brandishing a Firearm in Furtherance of a Crime of Violence.

65.     I, therefore, respectfully request that the attached warrant be issued authorizing the search and seizure of the items listed in Attachment B.

66.     I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge, and belief.

*s/ Michael Kim*
Michael Kim, Task Force Officer
Federal Bureau of Investigation

SUBSCRIBED and SWORN before me this   26th   day of  August 2020

UNITED STATES MAGISTRATE JUDGE

Application for search warrant was reviewed and is submitted by Brian Dunn, Assistant United States Attorney.